**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**


TINA P.,

      *Plaintiff,*                    Case No. 1:25-cv-12182

*v.*

COMMISSIONER OF SOCIAL           Patricia T. Morris
SECURITY,                        United States Magistrate Judge

      *Defendant.*

_____/

**MEMORANDUM OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 16)**

## I.    CONCLUSION

Plaintiff Tina P.'s motion for summary judgment will be **GRANTED** (ECF

No. 13) and Defendant the Commissioner of Social Security's motion for summary

judgment will be **DENIED** (ECF No. 16).  The final decision of the Administrative

Law Judge (ALJ) will be **VACATED** and this matter **REMANDED** for an

**IMMEDIATE AWARD OF BENEFITS** pursuant to sentence four of 42 U.S.C. §

405(g).

## II.    DISCUSSION

### A.    Introduction and Procedural History

This is Plaintiff's fourth appeal of the denial of her May 16, 2016 application

1

for disability insurance benefits.  Each of these appeals has come before the Undersigned.

The first appeal (No. 2:19-cv-11020) resulted in an opinion and order from the District Court remanding the matter.  The Court instructed the ALJ to either incorporate or better address Plaintiff's use of a cane and to address Plaintiff's arguments regarding her impairments and the need for an updated medical-expert opinion.  (ECF No. 24).

Upon remand, the ALJ again erred, so Plaintiff appealed.  That time, the Commissioner agreed remand was necessary; thus, the second appeal (No. 2:21-cv-12580) resulted in a stipulated remand.  The terms of the stipulation follow:

> The Social Security Administration will reassign the case to a different Administrative Law Judge, who will take any action warranted to further develop the record and issue a *de novo* decision.  In so doing, the Administrative Law Judge will give further consideration to [P]laintiff's residual functional capacity, in particular giving further consideration to whether [P]laintiff requires an assistive device, and whether [P]laintiff's headaches affect her residual functional capacity. If warranted, the Administrative Law Judge will obtain additional vocational expert testimony.

(ECF No. 13, PageID.2515).

Unfortunately, the third time was not the charm.  After receiving another unfavorable ALJ decision, Plaintiff appealed again (No. 1:23-cv-12419).  This appeal resulted in the Undersigned remanding the case for further proceedings, with explicit instructions that the ALJ must better explain the findings as to Plaintiff's

ability to handle, finger, and feel objects as well as the impact of her headaches on her functioning.[1]  (ECF No. 21).

Plaintiff's fourth hearing before an ALJ was held on April 17, 2025.  (ECF No. 4-2, PageID.1772–89).  The ALJ issued a written decision on May 8, 2025, finding Plaintiff was not disabled.  (*Id.* at PageID.1746–71).  Plaintiff then sought judicial review on July 17, 2025.  (ECF No. 1).

The parties have consented to the Undersigned's jurisdiction.  (ECF No. 9).  Before the Court are the parties' cross-motions for summary judgment (ECF Nos. 13, 16) as well as Plaintiff's response to the Commissioner's motion (ECF No. 20).  The Commissioner argues that the case should be remanded for further proceedings, while Plaintiff argues it should be remanded for an award of benefits.

## B.    Standard of Review

District courts have jurisdiction to review the Commissioner's final administrative decisions pursuant to 42 U.S.C. § 405(g).  The review is restricted solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."  *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified).  Substantial evidence is "more than a scintilla of evidence but

---

[1] The Undersigned noted that the ALJ was already instructed to fully consider Plaintiff's headaches in the second remand order.

less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation modified). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* (citation modified).

## C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.
>
> (ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.
>
> (iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.
>
> (iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.
>
> (v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

5

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing his or her RFC, which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of July 19, 2016, through her date last insured of March 31, 2018.  (ECF No. 4-2, PageID.1752).

6

At step two, the ALJ found the following severe impairments: fibromyalgia, status-post total hip replacement, migraines, status-post left shoulder replacement, osteoarthritis, and obesity. (*Id.*). At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing. (*Id.*).

Next, the ALJ found Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except: the claimant could perform occasional left-sided overhead reaching and frequent right-sided overhead reaching. She can perform frequent handling, fingering, and feeling. She can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can never work around hazards such as unprotected heights. She can occasionally work around vibration and have occasional exposure to atmospheric conditions as defined by the selected characteristics of occupations. She can never work around bright or flashing lights greater than a normal office lighting environment. She can work in a moderate noise environment as defined by the selected characteristics of occupations. She can work indoors only.

(*Id.* at PageID.1753).

At step four, the ALJ found that Plaintiff could perform her past relevant work as a cashier/checker and secretary. (*Id.* at PageID.1758). Thus, the ALJ concluded Plaintiff was not disabled. (*Id.* at PageID.1759).

### E.    Administrative Record

On appeal, Plaintiff argues that the ALJ's step four determination was the product of clear legal error and that there were once again problems with the

7

evaluation of the medical opinions of record and of the impact that Plaintiff's

migraines have on her ability to work.  The Commissioner agrees that the ALJ

committed reversible legal error at step four.  The parties' main point of contention

is whether this case should be remanded for an immediate award of benefits or for a

fifth hearing.

The Court relies on the factual recitation from its prior opinion and order but

will provide the portions relevant to this appeal below.

> During the relevant period, Plaintiff sought treatment from the Memorial Neurological Institute where she reported having headaches three times per week.  Although her physician's notes describe the headaches as "mild," they also mention that Plaintiff reported her headaches to be "debilitating," "striking[ly]" painful, and "quite bothersome."  Plaintiff's headaches were sometimes triggered by stress and aggravated by "light and noise."  They also caused "blurred vision" on occasion.  Her physician stated that her symptoms were "fairly well controlled with medication," but, believing Plaintiff's headaches to be caused by musculoskeletal issues, decided to withhold medication and prescribe physical therapy "aimed at strengthening her cervical paraspinal muscles."
>
> At a follow-up appointment, Plaintiff again reported fifteen to nineteen headaches per month, "the majority of which [were] quite severe and debilitating."  Her physician did not mention the physical therapy plan Plaintiff was to begin following her last appointment.  But, noting that none of Plaintiff's medications had any "significant benefit," her physician believed she was "a good candidate for a trial of Botox."  Plaintiff's Botox injections relieved her symptoms for months at a time, but her symptoms would sometimes relapse between injections.
>
> * * *
>
> Following this Court's latest remand, the ALJ held a remote hearing in which he heard testimony from Plaintiff, a vocational expert (VE), and

a medical examiner (ME).  The ALJ began the hearing by examining the ME.  First, he asked the ME to list Plaintiff's medically determinable impairments.

The ME did not give a direct answer.  Although the ME discussed two diagnoses that he found were not medically determinable—that is, "established by objective medical evidence from an acceptable medical source"—he did not list which impairments, if any, he found to be medically determinable.  20 C.F.R. § 404.1521.  The ME did mention a few of Plaintiff's surgeries and treatments, such as her right hip and left shoulder replacements.  But he did not clarify whether the impairments that warranted these treatments or Plaintiff's status while recovering from these treatments were medically determinable or severe for purposes of step two.

At any rate, the ME then opined that Plaintiff had the RFC "to lift or carry [ten] pounds and [twenty occasionally]," sit for a total of six hours during an eight-hour workday, and stand or walk for a total of six hours.  Although he found "nothing in the record to indicate . . . decreased functionality" in Plaintiff's shoulders, he suggested that she could lift her left arm overhead occasionally and that she could lift her right arm overhead frequently.  He suggested that Plaintiff could perform "(INAUDIBLE) manipulation" occasionally, and, in "deference" to her complaints of pain, he opined that she could stoop, crawl, and kneel occasionally.  The ME also opined that Plaintiff could not be exposed to unprotected heights, pulmonary irritants, or "vigorous vibrations."  He did not believe that Plaintiff required a cane to "ambulate and balance."

The ALJ then allowed Plaintiff's attorney to examine the ME.  Counsel first asked the ME whether he noticed that Plaintiff had surgery on her right hip shortly after her insurance expired.  The ME admitted that he overlooked that record and conceded that Plaintiff's "right hip became more of an issue over time."  Still, he remarked that the "last" record he reviewed regarding her right hip was an X-ray from September 2018 which revealed no "significant arthritic disease."  The ME also acknowledged that Plaintiff complained of pain and pursued physical therapy for her hips, but he opined that hip replacements "shouldn't" cause "significant residuals," and he dismissed Plaintiff's complaints as "purely subjective."  The "purpose" of his testimony, in his view,

9

was to identify "objective support for Plaintiff's complaint[s]."

Counsel later turned to Plaintiff's migraines.  The ME testified that while he believed that Plaintiff experienced "headaches," the record contained insufficient evidence for him to diagnose her with "migraines."  He testified that although physicians "had difficulty relieving Plaintiff's pain and . . . tried numerous medications," they eventually provided an "aggressive treatment" consisting of "Botox injection[s]."

Last, Counsel examined the ME regarding Plaintiff's arthritis.  The ME testified that the objective evidence in Plaintiff's medical record supported a diagnosis of osteoarthritis rather than rheumatoid arthritis. Because serological testing did not detect rheumatoid arthritis, he suggested that other evidence such as nodules, X-rays showing "erosion" in Plaintiff's right hand, and "nail pitting" only evidenced osteoarthritis.  The ME also dismissed abnormal results from a "grip strength test" because they were "subjective."  The ME did not clarify whether he believed this test was not useful for assessing Plaintiff's RFC or for distinguishing between osteoarthritis and rheumatoid arthritis under step two of his evaluation.  He did, however, state that the presence of osteoarthritis in one's fingers does not necessarily cause "excessive[ ]" limitations, even if it reduces "grip strength."

*Tina P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-12419, 2024 WL 1660527, at *3–*6

(E.D. Mich. Apr. 17, 2024) (citation modified).  Other evidence is discussed as

relevant below.

### F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability

decision.  42 U.S.C. § 423(d)(5)(B).  Plaintiff applied for benefits before March 27,

2017, meaning the ALJ was required to "give the opinion of a treating source

controlling weight if he finds the opinion well-supported by medically acceptable

10

clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citation modified).[2]  In the presence of contradicting substantial evidence, however, the ALJ may reject all or a portion of the treating source's findings, *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391–92 (6th Cir. 2004), provided that he supplies "good reasons" for doing so, *Wilson*, 378 F.3d at 544–48 (citing 20 C.F.R. § 404.1527(d)(2)).

In declining to give less than controlling weight to the treating provider's opinion, the ALJ must consider the (1) "length of the treatment relationship," (2) "frequency of examination," (3) "nature and extent of the treatment relationship," (4) "supportability of the opinion," (5) the "consistency of the opinion with the record as a whole," and (6) "specialization of the treating source." *Wilson*, 378 F.3d at 544.  "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; he need only provide good reasons for both his decision not to afford the physician's opinion controlling weight and for his ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) (citation

---

[2] In contrast, for claims made on or after March 27, 2017, the ALJ must weigh both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record.  20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources").

modified), *aff'd sub nom. Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Pursuant to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it— formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner*, 375 F.3d at 390.

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a); SSR 16-3p, 2016 WL 1119029, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at *2; *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y*

12

*of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (citation modified), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

> (i) [D]aily activities;
>
> (ii) The location, duration, frequency, and intensity of . . . pain;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication . . taken to alleviate . . . pain or other symptoms;
>
> (v) Treatment, other than medication, . . . received for relief of . . . pain;
>
> (vi) Any measure . . . used to relieve . . . pain.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7.

## G.     Argument and Analysis

As stated above, Plaintiff argues that the ALJ's step four determination was the product of clear legal error and that there were once again problems with the evaluation of the medical opinions of record and of the impact that Plaintiff's migraines have on her ability to work. The Commissioner concedes that the ALJ reversibly erred at step four but argues that the evaluation of the medical opinions and Plaintiff's migraines was sound.

The parties agree not only that the ALJ erred at step four by finding Plaintiff

was capable of performing past relevant work, despite such work being performed outside of the five-year period that the ALJ was permitted to consider, but that this error requires reversal. The question for the Court is what type of remand to order.

"When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted." *Vorhis-Deaton v. Comm'r of Soc. Sec.*, 34 F. Supp. 3d 809, 821–22 (6th Cir. 2014). Indeed, sentence four of 42 U.S.C. § 405(g) provides that the reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

The Sixth Circuit has held that it is appropriate to remand for an immediate award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Kim v. Comm'r of Soc. Sec.*, No. 12-11694, 2013 WL 3981893, at *8 (E.D. Mich. Aug. 1, 2013) (citing *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). "This comports with the principle that 'where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.'" *Palaghe v. Comm'r of Soc. Sec.*, No. 15-11920, 2016 WL 1714733, at *18 (E.D. Mich. Apr. 28, 2016) (quoting *Wilson*, 378 F.3d at 547 (citations omitted)). Thus, "[t]he Court may award benefits where the proof of

disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming." *Vorhis-Deaton*, 34 F. Supp. 3d at 822.

The ALJ decision currently before the Court (Decision 4) incorrectly evaluates the medical opinions of record just as Decision 3 did. Both ALJs gave great weight to the testifying ME's opinion.

"[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12–cv–119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). "In descending order, these medical source opinions are: (1) treaters; (3) examiners; and (3) record reviewers." *Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 912, 919 (S.D. Ohio 2016). "A treater's opinion must be given controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record." *Id.* (citation modified). After treaters come examiners, who often evaluate a plaintiff once. *Id.* And last of all are record reviewers whose opinions "are afforded the least deference." *Id.*

"The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Snell*, 2013 WL 372032, at *9. "Unless the opinion of the treating source is entitled to controlling weight, an ALJ must evaluate all medical opinions

15

with regard to the factors set forth in 20 C.F.R. § 404.1527(c)." *Woodcock*, 201 F. Supp. 3d at 919 (citation modified).   These factors include the examining relationship, treatment relationship, length of treatment relationship and frequency of examination, nature and extent of treatment relationship, supportability, consistency, and specialization.  20 C.F.R. § 404.1527(c).

Moreover, the regulations also provide that "opinions from 'other sources' can be used to establish the severity of a claimant's impairment and establish how impairments affect a claimant's ability to work." *Woodcock*, 201 F. Supp. 3d at 920 (quoting 20 C.F.R. § 404.1513(d)).  Other sources include medical professionals like nurse practitioners who do not qualify as acceptable medical sources.  *Id.*  "Although other medical sources who have treated a claimant are not entitled to controlling weight like a treating physician or psychologist are, other sources may be entitled to *more* weight than acceptable medical sources under the unique circumstances of a given case."  *Id.* (citation modified).

In Decision 3, the ALJ explained:

> Dr. Golub [the ME] testified the record supported a diagnosis of osteoarthritis, but not rheumatoid arthritis.  I afford greater weight to the residual functional capacity provided by Dr. Golub, which included limiting the claimant to a reduced range of light exertional level, including sitting for 6 hours and standing/walking for 6 hours total, lifting overhead on the left occasionally and lifting overhead on the right frequently, occasional stooping, kneeling, and crawling, and no exposure to unprotected heights or vibration specifically with the left upper extremity, and occasional exposure to pulmonary irritants.  Dr. Golub testified he did not see that a cane was medically necessary to

16

ambulate or balance.  Again, these opinions are more consistent with the overall relevant portion of the record.  He noted the claimant's subjective reports of ongoing hip pain, but that the record did not objectively support such ongoing subjective complaints.  Dr. Golub also noted that regarding findings pertaining to degenerative disc disease, that the fact that the claimant was 50 at the time of the alleged onset date, as well as her being obese, would cause some level of degenerative problems, and that objective findings overall do not support the claimant's subjective complaints of ongoing pain and limitations.  He noted the claimant's subjective complaints are very common given the procedures she underwent, in addition to her aging and obesity.  Dr. Golub noted that the claimant received aggressive treatment (Botox) injection in November 2017 and she was prescribed Topamax, and that this was not an ongoing problem.

(ECF No. 4-2, PageID.1221–22 (internal record citations omitted)).  The ALJ also relied on the ME's opinion at various other points in the decision, often using it to undermine the opinions of others, including Plaintiff's treating nurse practitioner Kristina Yaklin.  (*See id.* at PageID.1216, 1218, 1220–21).  For example, the ALJ explained that he gave Yaklin's opinion little weight because she opined that Plaintiff needed an assistive device and afforded the ME's opinion great weight because he concluded otherwise:

[Yaklin] stated that due to the claimant's hip and lower back condition including her arthritis and post-right hip arthroplasty, the claimant "is in need of a cane or other assistive device both for balance and ambulation."  She stated that this need of an assistive device "would be since her hip surgery and before March 31, 2018, and continuing."  This opinion is afforded little weight.  This is inconsistent with the claimant's use of an assistive device noted throughout the record, which was noted to be used only immediately after a surgical procedure, or used for walking longer distances.  As discussed at the hearing, Dr. Golub did not feel that a cane or other assistive device was medically necessary given his review of the overall record.  His opinions are given

17

great weight, as he had the opportunity to review the entirety of the record as a whole, in addition to listening to the claimant's hearing testimony.  Furthermore, the claimant's gait was assessed as normal at multiple points during the relevant portion of the record.  Also, at the hearing, the claimant stated she would not use an assistive device around her home because she has other things to hold on to, and she stated that she only sometimes uses a cane when she goes outside the home.

(*Id.* at PageID.1220–21).

However, as the Court explained in its prior opinion and order, the ALJ's overreliance on the ME's opinion led to an unsupported finding regarding Plaintiff "ability to handle, finger, or feel objects." *Tina P.*, 2024 WL 1660527, at \*12.  The Court further found that the ALJ failed to abide by the remand order requiring that further consideration be given to the functional limitations caused by Plaintiff's migraines.  *Id.* at \*14.

Decision 4 is heavily copied and pasted from Decision 3, with the following paragraph added to address the Court's opinion:

Based on the above evidence regarding the claimant's treatment for migraines in 2017, I find the claimant was further limited to no work around bright or flashing lights greater than a normal office lighting environment; work in a moderate noise environment as defined by the selected characteristics of occupations; and work indoors only. Additionally, the claimant reported hand pain with numbness and tingling in both hands due to arthritis during the relevant period.  She also reported dropping items frequently.  Based on the above medical evidence regarding the claimant's osteoarthritis with associated hand pain, I find the claimant would be further limited to frequent handling, fingering, and feeling.

(*Id.* at PageID.1758).  Decision 4 repeated the following language from Decision 3:

> Dr. Golub testified the record supported a diagnosis of osteoarthritis, but not rheumatoid arthritis. I afford greater weight to the residual functional capacity provided by Dr. Golub, which included limiting the claimant to a reduced range of light exertional level, including sitting for 6 hours and standing/walking for 6 hours total, lifting overhead on the left occasionally and lifting overhead on the right frequently, occasional stooping, kneeling, and crawling, and no exposure to unprotected heights or vibration specifically with the left upper extremity, and occasional exposure to pulmonary irritants. Dr. Golub testified he did not see that a cane was medically necessary to ambulate or balance. Again, these opinions are more consistent with the overall relevant portion of the record.

(*Id.* at PageID.1757). The ALJ does not explain how the record, which reflects a diagnosis of rheumatoid arthritis from a treating physician, is consistent with the ME's opinion that Plaintiff does not have rheumatoid arthritis. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and *diagnoses* of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." (emphasis added)). Nor does the ALJ explain the repeated finding that the ME's "opinions are given great weight, as he had the opportunity to review the entirety of the record as a whole, in addition to listening to the claimant's hearing testimony" (*id.*), even though it is contrary to the regulations, which place reviewers at the bottom of the acceptable-source hierarchy, *see Woodcock*, 201 F. Supp. 3d at 919 (S.D. Ohio 2016).

The ALJ's finding that Plaintiff was not disabled was primarily supported by the ME's opinion. Because the ALJ incorrectly evaluated this opinion, substantial evidence does *not* support the ALJ's finding. When considering a case where the

19

ALJ heavily relied on an incorrect test result, the Fifth Circuit reasoned:

> The ALJ's significant reliance upon an incorrect test result would render the finding of no disability unsupported by substantial evidence. The Secretary's assertion that the ALJ did not actually rely on the wrong test is belied by the emphasis on the results of this particular test in the ALJ's opinion. It is clear from the opinion, which is the only insight we have into the ALJ's decisionmaking process, that the EMG test result was a major factor in the determination of no disability.

*Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992). And when remanding the case for benefits, the Fifth Circuit explained:

> In light of the Secretary's mistaken reliance on the improper medical report and in light of our review of [the plaintiff's] extensive medical record, we hold that there is not substantial evidence to support the Secretary's decision that [the plaintiff] is not disabled. Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review.

*Id.*

While the Commissioner correctly cites *INS v. Ventura*, 537 U.S. 12, 16 (2002) (citation modified) for the principle that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation," this is such a rare circumstance. At least one Circuit has found that circumstances similar to those here "present[] the rare circumstance in which a remand for additional investigation would be inappropriate." *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). In *Moisa*, the Ninth Circuit remanded for an immediate award of benefits where

> (1) the ALJ failed to provide legally sufficient reasons for rejecting [the

20

plaintiff's] testimony, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find [the plaintiff] disabled if his testimony were credited.

*Id.* The Ninth Circuit noted that "the Commissioner, having lost this appeal, should not have another opportunity to show that [the plaintiff] is not credible any more than [the plaintiff], had he lost, should have an opportunity for remand and further proceedings to establish his credibility." *Id.*

Similarly, district courts in the Sixth Circuit have routinely cited lengthy proceedings involving multiple rounds of appeals as a reason to remand for an immediate award of benefits. For example, in *Foster v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 709, 717–18 (S.D. Ohio 2019), the court recognized

the unusual circumstances of this appeal: three unsound ALJ decisions, all of which included reversable error in the analysis of the same treating physician. Given these circumstances and the strong, uncontroverted evidence of record in support of a finding of disability, there is no just reason to further delay this matter for even more administrative procedures.

Likewise in *McAfee v. Comm'r of Soc. Sec.*, No. 3:19-CV-125, 2020 WL 5810004, at *5 (S.D. Ohio Sept. 30, 2020), where the Court acknowledged

the unusual circumstances of this case: its age -- more than 10 years old -- together with three unsound ALJ decisions, some of which the Commissioner conceded included error requiring reversal. Given these circumstances and the strong, uncontroverted evidence of record in support of a finding of disability, there is no just reason to further delay this matter for even more administrative procedures.

And as another magistrate judge in this District reasoned after finding that an ALJ's

21

decision was not supported by substantial evidence,

> given the medical opinion evidence of record, as well as the fact that this case was previously remanded for reevaluation of that evidence, the Court finds that another remand is unnecessary; any reasonable analysis of the medical opinions, as well as [the plaintiff's] testimony and other record evidence, amply supports a finding that [the plaintiff] is disabled.

*Teisha M. R. v. Comm'r of Soc. Sec.*, No. CV 23-11219, 2024 WL 4220669, at *1

(E.D. Mich. Sept. 17, 2024).  That magistrate judge also cited caselaw in support of

his decision to remand for benefits:

> While remanding for an award of benefits is rare, where a particular case's nuanced facts warrant it, judges in this district have done so.  For example, in *Donahue v. Massanari*, 166 F. Supp. 2d 1143, 1149 (E.D. Mich. 2001), the court remanded the case for an award of benefits because "the Commissioner [ ] had two opportunities to deny Plaintiff benefits in a legal fashion – and [ ] still failed to do so."  The plaintiff in *Donahue* was approaching 59 years old; his application had been pending for seven years; the court had remanded the case for further consideration three years earlier; and the record had changed little since that initial remand.  *Id.* at 1145, 1150.  Moreover, the record lacked persuasive evidence supporting the Commissioner's position that the plaintiff could perform light work.  *Id.* at 1148.  Because of those factors, the court remanded the case for an award of benefits.  *Id.* at 1150.  *See also Yoder v. Comm'r of Soc. Sec.*, No. 10-14941, 2011 WL 6308313, at *7 (E.D. Mich. Dec. 16, 2011) ("This Court remands this case for an award of benefits because Plaintiff has endured considerable delay and proof of disability is strong and evidence to the contrary is lacking."); *Emmendorfer v. Comm'r of Soc. Sec.*, No. 20-10123, 2021 WL 850559, at *5 (E.D. Mich. Feb. 16, 2021) (remanding after three administrative hearings, two earlier remand orders (one from the court and one from the Appeals Council), and finding "enough is enough").

*Id.* at *12.

Four rounds is enough here.  The Commissioner has had four chances to reach

a legally sound decr v. Sec'y of Soc. Sec.ision and has failed each time.  It is undisputed that the instant decision must be reversed due to the ALJ's legal error at step four.  The Court also agrees with Plaintiff that the ALJ again erred in evaluating the opinion evidence of record.

Following a reasonable review of the medical opinions, the notes and diagnoses contained in records from Plaintiff's treating providers, and Plaintiff's subjective reports, the Court concludes substantial evidence supports a finding that Plaintiff is disabled.  The Court is unpersuaded by the Commissioner's continued reliance on the ME's testimony.  The ME has never examined Plaintiff let alone treated her, yet two ALJs have now deferred to his opinion without explaining why it was afforded so much weight despite it contradicting the diagnoses of rheumatoid arthritis and migraines from Plaintiff's treating physicians. "A judicial award of benefits is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Faucher v. Sec'y of Soc. Sec.*, 17 F.3d 171, 176 (6th Cir. 1994). Since evidence to the contrary is missing, the ALJ's decision shall be vacated and this matter remanded for an immediate award of benefits.

## III.  **ORDER**

For these reasons, Plaintiff's motion (ECF No. 13) is **GRANTED** and the Commissioner's motion (ECF No. 16) is **DENIED**.  The ALJ's decision is hereby

23

**VACATED** and this matter **REMANDED** for an **IMMEDIATE AWARD OF BENEFITS** pursuant to sentence four of 42 U.S.C. § 405(g).

    **IT IS SO ORDERED.**

Date: June 25, 2026                        S/PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge